990 F.2d 1133
 RICO Bus.Disp.Guide 8269
 Jean C. DURNING; Marvin B. Durning, Plaintiffs-Appellants,
United States Attorney General, Intervenor,
v.
CITIBANK, INTERNATIONAL; The First Boston Corp.; First
Interstate; Wyoming Community Development
Authority, Defendants-Appellees.
Jean C. DURNING; Marvin B. Durning, on behalf of themselves
and all other persons similarly situated,
Plaintiffs-Appellees,
United States Attorney General, Intervenor,
v.
The FIRST BOSTON CORP.; Citibank, N.A.; First Interstate;
First Interstate of Casper; Wyoming Community
Development Authority, Defendants-Appellants.
 Nos. 92-35154, 92-35201.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1993.
Decided April 7, 1993.
 
 James H. Webster and Richard P. Blumberg, Webster, Mark & Blumberg, Seattle, WA, for plaintiffs-appellants.
 Scott A. Milburn, Preston Thorgrimson Shidler Gates & Ellis, Seattle, WA, for defendant-appellee The First Boston Corp.
 Bennet A. McConaughy, Foster, Pepper & Shefelman, Bellevue, WA, for defendant-appellee Wyoming Community Development Authority.
 Douglas Letter, U.S. Dept. of Justice, Washington, DC, for intervenor U.S. and amicus S.E.C.
 Before: GOODWIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants Marvin and Jean Durning (the "Durnings") appeal the district court's dismissal of their class action in which they assert claims of securities fraud and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, against Defendants-Appellees First Boston Corporation and Wyoming Community Redevelopment Authority and Defendants Citibank, N.A., and First Interstate Bank of Casper, N.A. Defendants-Appellees cross appeal the district court's class certification.
 
 
 2
 We affirm the district court's dismissal of the Durnings' claims and therefore need not reach the class certification issues.
 
 BACKGROUND
 
 3
 In December 1981, the Wyoming Community Development Authority (the "Authority") issued $75 million in single-family mortgage revenue bonds. The proceeds from the bond issue were used by the Authority to provide housing loans to low and moderate income families in Wyoming. First Boston Corporation was the lead underwriter for the syndicate that marketed the bonds; First Interstate Bank of Casper acted as trustee, and Citibank was the paying agent.
 
 
 4
 In connection with the bond issue the defendants circulated an Official Statement, a disclosure document akin to a prospectus. The Official Statement listed most of the dates that the bonds could be redeemed, including optional redemption dates beginning in June 1991; but it failed to explain that the bonds were callable under certain conditions at any time.
 
 
 5
 The Durnings purchased four bonds in December 1981. The bonds had a face value of $5,000 and a maturity date of June 1, 1996. The Durnings allege that they were misled by the Official Statement into believing that the bonds were not subject to redemption prior to 1991, and that they would not have purchased the bonds had they not been so misled. It is undisputed, however, that the bonds themselves and the trust indenture fully authorized the redemptions.
 
 
 6
 Between 1983 and 1985, the Authority redeemed approximately half of the $75 million bond issue. One of the Durnings' bonds was redeemed in May, 1985. A few months later, Mr. Durning filed this class action through his law firm, Durning, Webster & Lonnquist. The complaint alleged federal securities and RICO violations as well as claims under state securities law, consumer protection and common law fraud and breach of contract theories.[1]
 
 
 7
 Initially, the district court dismissed the complaint for failing to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6) after determining, as a matter of law, that the Official Statement sufficiently informed investors that the bonds were redeemable prior to June 1991. See Durning v. First Boston Corp., 627 F.Supp. 393 (W.D.Wash.1986). This court reversed, holding that the Official Statement was sufficiently ambiguous to leave open a claim that the document may have misled investors by failing to inform them of the possibility of early redemption. See Durning v. First Boston Corp., 815 F.2d 1265 (9th Cir.), cert. denied, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).
 
 
 8
 Following remand, the district court granted motions to dismiss on a variety of grounds. The district court first dismissed the Durnings' RICO claims, concluding that the Durnings could not prove the requisite pattern of racketeering activity by the defendants. The district court also granted the defendants' renewed motion to dismiss the Durnings' section 10(b) claims as untimely following the Supreme Court's rulings in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (adopting federal statute of limitations for federal securities claims under section 10(b) and applying new rule to litigants, dismissing case) and James B. Beam Distilling Co. v. Georgia, --- U.S. ----, ----, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991) ("[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata.").
 
 
 9
 Section 27A of the Securities and Exchange Act of 1934 (the "Act") was enacted on December 19, 1991, providing for possible reinstatement of section 10(b) claims dismissed after Lampf upon motion within 60 days of section 27A's enactment. The Durnings never filed a motion for reinstatement. They did, however, file their notice of appeal on February 4, 1992 (within section 27A's 60 day period). On February 18, 1991, Appellees timely filed their notice of cross-appeal challenging the district court's class certification.
 
 I. Lampf and Section 27A
 
 10
 Appellants argue that the district court erred in dismissing their claims under section 10(b) of the Act, 15 U.S.C. § 78j, and S.E.C. Rule 10b-5 (hereinafter "10b-5 claim"). Appellants first contend that their 10b-5 claim was timely filed under the limitations period declared by the Supreme Court in Lampf. In the alternative, Appellants contend that section 27A of the Act, 15 U.S.C. § 78aa-1, preserves for them the more lenient state statute of limitations that applied to their case prior to Lampf.[2] We reject both of these arguments.
 
 
 11
 A. Appellants' Claims are Time-Barred under Lampf
 
 
 12
 In Lampf, the Supreme Court established a uniform statute of limitations for federal securities claims brought under section 10(b) of the Act: such claims "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." --- U.S. at ----, 111 S.Ct. at 2782.
 
 
 13
 Appellants argue that the fraud here consisted of both the misrepresentation in the Official Statement in 1981 and the subsequent redemption of the bonds which, for the Durnings, occurred in 1985. Therefore, the Durnings contend that they brought their suit well within the three-year cutoff because defendants' fraud continued until 1985, the same year the Durnings filed their complaint. We reject this claim just as the magistrate and district court did. The Durnings' securities fraud claim arose in 1981, when the Official Statement allegedly misrepresented the bonds' redemption dates and the bonds were purchased. See Continental Bank, Nat'l Ass'n v. Village of Ludlow, 777 F.Supp. 92, 102 (D.Mass.1991) (Lampf 's three year period of repose "begins when the last alleged misrepresentation was made" by the defendants); see also McCool v. Strata Oil Co., 972 F.2d 1452, 1460 (7th Cir.1992) ("In securities fraud cases, the federal rule is that the plaintiff's cause of action accrues 'on the date the sale of the instrument is completed.' ").[3] Because this occurred in 1981 and the Durnings filed their complaint more than three years later, the Durnings' 10b-5 claim was not timely filed.
 
 
 14
 In establishing its three-year cutoff date in Lampf, the Supreme Court expressly rejected equitable tolling principles. See --- U.S. at ----, 111 S.Ct. at 2782 ("Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that [equitable] tolling principles do not apply to that period."). Essentially, Appellants are trying to dress an equitable tolling argument in new clothing to avoid the harsh result that the Lampf rule requires. We will not accept Appellants' invitation to ignore the Supreme Court's clear dictate. The Durnings' 10b-5 claim is time-barred under Lampf.
 
 B. Section 27A Does Not Apply
 
 15
 Appellants alternatively argue that section 27A preserves for them the statute of limitations in effect prior to Lampf. Section 27A provides:
 
 
 16
 (a) Effect on pending causes of action. The limitation period for any private civil action implied under section 10(b) of this Act [15 U.S.C. § 78j(b) ] that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
 
 
 17
 (b) Effect on dismissed causes of action. Any private civil action implied under section 10(b) of this Act [15 U.S.C. § 78j(b) ] that was commenced on or before June 19, 1991--
 
 
 18
 (1) which was dismissed as time barred subsequent to June 19, 1991, and
 
 
 19
 (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,
 
 
 20
 shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section [enacted Dec. 19, 1991].
 
 
 21
 15 U.S.C. § 78aa-1.
 
 
 22
 Appellants contend that they fall within section 27A(a)'s purview because their case was "pending" on December 19, 1991, the date section 27A was enacted. Alternatively, Appellants contend that they fall within section 27A(b)'s purview because they effectively moved for reinstatement by filing their notice of appeal to this court within the statute's 60-day time limitation for motions for reinstatement. We reject both of these contentions.
 
 
 23
 1. Appellants' Cause of Action Was "Dismissed" and Not
 
 
 24
 "Pending" for Purposes of Section 27A
 
 
 25
 Appellants maintain that even though their 10b-5 claim had been dismissed by the district court on October 24, 1991, their claim was still "pending" for purposes of section 27A(a). They suggest that a case is "pending" under section 27A(a) until the "case's journey through the courts comes to an end." Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d 805, 813 (11th Cir.1988), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). Because they had not exhausted all avenues for appeal, Appellants contend that their case was still "pending" thereby entitling them to automatic protection from Lampf under section 27A(a).
 
 
 26
 Acceptance of Appellants' construction of the term "pending" under section 27A(a) would render section 27A(b) virtually meaningless. Section 27A(b)'s mechanism for motions for reinstatement would necessarily apply only to the few cases that had completed their journey through the courts. Moreover, Appellants' reliance on McDaniel and the general judicial definition of "pending" cases confuses the issue. The question here is not what does "pending" mean in the abstract, but instead what did Congress intend the term "pending" to mean in the context of the statute. That is, as a matter of statutory construction, what did Congress mean when it distinguished in sections 27A(a) and 27A(b) between "pending causes of action" and "dismissed causes of action." In none of the cases on which Appellants rely did Congress use the term "pending" causes of action as distinguished from "dismissed" causes of action. Thus, those cases are of little guidance in interpreting section 27A.[4]
 
 
 27
 We interpret the statute's language and structure in accordance with the plain meaning of the distinction between "pending" and "dismissed" causes of action. See Green v. Bock Laundry Machine Co., 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989) (unless the language of a statute compels an odd or absurd result, a court must interpret a statute in accordance with its plain meaning). Because Appellants' 10b-5 claim was dismissed almost two months prior to section 27A's enactment, that claim is properly classified as a "dismissed" cause of action under section 27A(b) rather than a "pending" cause of action under section 27A(a). This conclusion does not mean that Appellants were left unprotected by section 27A. Instead, it means that Appellants were simply required to file a motion to have their dismissed claims reinstated under section 27A(b).
 
 
 28
 2. Appellants Failed to Move for Reinstatement
 
 
 29
 Section 27A(b) provides that any private civil action implied under section 10(b) which was dismissed as time barred subsequent to June 19, 1991 and would have been timely filed pre-Lampf "shall be reinstated on motion by the plaintiff not later than 60 days after Dec. 19, 1991." 15 U.S.C. § 78aa-1(b). It is undisputed that Appellants failed to file a motion for reinstatement. Instead, Appellants claim that their filing of a notice of appeal with the Ninth Circuit should be construed as "substantial compliance" with the statute, or the "functional equivalent" of a motion for reinstatement. We reject Appellants' invitation to disregard Congress' express language. Moreover, a merely procedural, boilerplate notice of appeal hardly serves as the functional equivalent of a substantive motion. Appellants' notice of appeal in no way mentions a request for reinstatement nor even refers specifically to Lampf, section 27A, or the district court's dismissal on statute of limitations grounds. Because they entirely failed to comply with the motion for reinstatement requirement Congress established, Appellants cannot rely on section 27A.
 
 II. RICO
 
 30
 Appellants challenge the district court's dismissal of their claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. The district court approved and adopted the conclusions of Magistrate Sweigert that Appellants "cannot plead or prove the requisite 'pattern of racketeering activity' " required to sustain a claim under RICO. We affirm.
 
 
 31
 To establish a claim under RICO, a plaintiff generally must establish a "pattern of racketeering activity" under 18 U.S.C. § 1962(c). In describing the term "pattern," the RICO statute provides only that it "requires at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). In the context of a securities fraud suit, a predicate act is defined as "any offense involving ... fraud in the sale of securities" which is "punishable under any law of the United States." 18 U.S.C. § 1961(1)(D). In this case, the Durnings allege mail and wire fraud as defendants' predicate acts.
 
 
 32
 The Supreme Court has explained that the "pattern" requirement can be met by showing (1) "that the racketeering predicates are related," and (2) that the predicates "amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). This circuit has "adopted a test for pattern which inquires whether the predicate acts are sporadic or isolated. If they are isolated and sporadic, then they cannot form a 'pattern.' " Ikuno v. Yip, 912 F.2d 306, 309 (9th Cir.1990) (citing Sun Sav. & Loan v. Dierdorff, 825 F.2d 187, 194 (9th Cir.1987)).
 
 
 33
 The district court determined that while defendants may have performed numerous predicate acts of mail and wire fraud in connection with their initial dissemination of the Official Statement, the acts did not establish a "pattern." We agree. While defendants may have committed numerous related predicate acts, all of those acts arose from a single, isolated event: the distribution of the misleading Official Statement. Defendants' alleged fraud consists of their dissemination of that one misleading document in conjunction with a single issuance of bonds.
 
 
 34
 This case does involve more than one victim of the alleged fraud. Cf. Medallion Television Enters. v. SelecTV of California, 833 F.2d 1360 (9th Cir.1988) (no pattern under RICO where defendant was the single victim of alleged fraud), cert. denied, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). Nonetheless, this case involves isolated activity rather than an ongoing scheme which amounts to, or poses a threat of "continued criminal activity." H.J., Inc., 492 U.S. at 239, 109 S.Ct. at 2900. Moreover, the Durnings did not allege that the defendants misrepresent the callability of bonds as a regular way of conducting their ongoing legitimate business. See id. at 242, 109 S.Ct. at 2902.
 
 
 35
 Finally, the Durnings incorrectly argue that defendants' redemptions were unlawful. If the redemptions had been unlawful, they could additionally serve as predicate acts under RICO. Indeed, if the redemptions themselves were unlawful, then the defendants would pose a threat of continuing criminal activity because a sizeable number of bonds have yet to be redeemed and, potentially, defendants still could be engaged in further unlawful redemptions. We conclude, however, that any prior or future redemptions were lawful. The district court repeatedly held, and the Durnings do not now dispute, that the early redemptions at issue here are fully authorized by the bonds themselves and the trust indenture. The Durnings therefore do not have a viable "fraud at redemption" claim, but instead only a "fraud at issuance" claim. While this may provide them with a valid securities fraud claim under section 10(b) of the 1934 Act, it does not provide the basis for a RICO claim.
 
 
 36
 Because we affirm the district court's dismissals of Appellants' substantive claims, we do not reach Appellants' and Appellees' various arguments regarding the district court's other alleged errors.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 The Durnings have appealed only the district court's dismissal of their § 10(b) and RICO claims
 
 
 [2]
 Appellees argue that section 27A is unconstitutional. Recently, however, we have upheld the constitutionality of section 27A. See Gray v. First Winthrop Corp., 989 F.2d 1564, 1570 (9th Cir.1993)
 
 
 [3]
 Appellants' reliance on Harris v. Union Elec. Co., 787 F.2d 355, 360 (8th Cir.), cert. denied, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986), is misplaced. Harris was an equitable tolling case and the Supreme Court in Lampf explicitly rejected equitable tolling principles in establishing its bright line three-year period of repose
 
 
 [4]
 Our interpretation of the term "pending" here in no way conflicts with our holding in Gray v. First Winthrop Corp., 989 F.2d 1564, 1570 (9th Cir.1993). There we concluded that section 27A did not violate the doctrine of separation of powers as applied to three consolidated cases because all three cases were "pending" and not "final." Here, we do not distinguish between "pending" and "final" cases for separation of powers purposes, but instead between "pending causes of action" and "dismissed causes of action" as a matter of statutory construction. Thus, there is no conflict or contradiction. Certainly a term may have different meanings in different contexts