61 F.3d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 AMACO ENTERPRISES INC., A California Corporation, Plaintiff,
and
Bruce R. MacLeod, State Bar No. 57647,
Real-Party-in-Interest-Appellant,
v.
Joel SMOLEN, an individual; Deloitte, Haskins & Sells, a
Partnership, Defendants-Appellees.
AMACO ENTERPRISES INC., A California Corporation; Applied
Molecular Technology Corp., A California
Corporation; Vernal Amaro; Harvey
Armstrong; Richard Cook and
Leland McCarthy,
Plaintiffs-Appellants,
v.
Joel SMOLEN, an individual; Deloitte, Haskins & Sells, a
Partnership, Defendants-Appellees.
CONSOLIDATED WESTWAY GROUP, INC., a Delaware Corporation;
Westway Metals Corp., a Delaware Corporation;
Plaintiffs-Appellants,
v.
Joel SMOLEN, an individual; Deloitte, Haskins & Sells, a
Partnership, Defendants-Appellees.
 
 Nos. 93-16746, 94-16269 and 94-16281.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1995.
Decided July 17, 1995.
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Amaco Enterprises, Inc. ("Amaco") and its owners, Consolidated Westway Group, Inc. and Westway Metals Corp., appeal the district court's partial summary judgment in favor of defendants Joel Smolen and the accounting firm of Deloitte, Haskins & Sells ("DHS"). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We review de novo, Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994), and we affirm in part, reverse in part, vacate in part, and remand.
 
 
 3
 These consolidated appeals arise out of a loan transaction and a sale of stock involving a precious metals reclamation business, Applied Molecular Technology Corporation ("Amtec"). The Westway plaintiffs brought racketeering, fraud and misrepresentation claims arising out of a $3.5 million loan made by Westway to Amtec in June of 1982. The Amaco plaintiffs brought similar claims arising out of Amaco's July 1982 purchase of Amtec stock.
 
 I. Westway v. DHS
 
 4
 A. RICO, Fraud and Negligent Misrepresentation
 
 
 5
 Westway contends that the district court erred by granting summary judgment for DHS on its RICO, fraud and negligent misrepresentation claims based on the court's conclusion that Westway's reliance on Amtec's financial statement was unjustified. Westway contends that because genuine issues of material fact remain, summary judgment was improper. In the alternative, Westway contends that because this case involves "primarily omissions" to disclose material facts justifiable reliance is presumed. These contentions lack merit.
 
 
 6
 Justifiable reliance requires a showing that plaintiff's reliance was reasonable in light of all the circumstances giving consideration to the plaintiff's intelligence and experience. Atari Corp. v. Ernst & Whinney, 981 F.2d 1025, 1030-31 (9th Cir. 1992); General Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1520 (9th Cir. 1993).
 
 
 7
 Here, the uncontroverted facts establish that Westway: (1) was an experienced and sophisticated dealer in precious metals; (2) knew that Amtec's net worth was closely tied to the value of its inventory; (3) knew that it relied on financial statements that were over a year old; and (4) knew that Amtec would experience inventory turnover during the normal course of its business.
 
 
 8
 Because Amtec's net worth was closely tied to the value of its inventory, and because Amtec's inventory was subject to constant change, any credit decision based on Amtec's net worth would necessarily have to focus upon the value of Amtec's inventory. Here, Westway knew the value of Amtec's inventory as reflected in the May 31, 1981 financial statement did not reflect the value of Amtec's inventory at the time of the loan. Nevertheless, Westway decided to lend Amtec $3.5 million when it knew the financial statements it was relying upon were no longer accurate. Because Westway knew Amtec's May 31, 1981 financial statements were no longer accurate, its reliance upon them was unjustifiable. See Blankenheim v. E.F. Hutton & Co., 217 Cal. App. 3d 1463, 1475 (1990).
 
 
 9
 Next, Westway argues that, because this case involves "primarily omissions," reliance should be presumed. In Affiliated Ute Citizens v. United States, 406 U.S. 128 (1972), upon which appellants rely, the Supreme Court stated that positive proof of reliance is not required in material nondisclosure cases under Rule 10b-5. Id. at 153-54. The California Supreme Court has specifically declined to incorporate the Affiliated Ute presumption into California tort law. Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (1993). Thus, Westway's contention that its reliance should be presumed lacks merit. See id. Westway's RICO claim must also fail because DHS did not participate in the operation or management of Amtec. See Reves v. Ernst & Young, 113 S. Ct. 1163, 1170-73 (1993).
 
 B. Indemnity and Declaratory Relief
 
 10
 Because Westway has failed to show that it was harmed by DHS, the district court properly denied Westway's claims for indemnity and declaratory relief.
 
 II. Westway v. Smolen
 
 11
 Westway contends that the district court erred by granting summary judgment for Smolen on Westway's RICO claim because it presented sufficient evidence to raise a triable issue of fact as to whether Smolen engaged in a pattern of racketeering activity which was the proximate cause of Westway's damages. This contention has merit.
 
 
 12
 To have standing to assert a claim under 18 U.S.C. Sec. 1962(c), Westway must first raise a genuine issue of material fact as to whether Smolen's conduct was a proximate cause of its injury. See Holmes v. Sec. Investor Protection Corp., 112 S. Ct. 1311, 1322 (1992); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928-29 (9th Cir. 1994). To demonstrate proximate cause, "there must be a direct relationship between the injury asserted and the injurious conduct." Pillsbury, 31 F.3d at 928 (citations omitted).
 
 
 13
 Here, Westway alleges that it was injured by Smolen's fraudulent inventory manipulation which resulted in overstated financial records. Westway argues that this injury is neither indirect nor derivative because it made the loan directly based on Smolen's misrepresentations. To the extent that Smolen made representations directly to Westway regarding Amtec's current profitability, such direct communication would be sufficient to establish proximate cause in light of the allegations that Smolen caused DHS to overstate Amtec's inventory value and net worth. See Pillsbury, 31 F.3d at 928-29.
 
 
 14
 Westway must also create a triable issue of fact regarding whether Smolen engaged in a pattern of racketeering activity. In order to prove a pattern of racketeering activity, Westway must show "(1) 'that the racketeering predicates are related,' and (2) that the predicates 'amount to or pose a threat of continued criminal activity."' Durning v. Citibank, Int'l, 990 F.2d 1133, 1138 (9th Cir. 1993) (citing H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)). "Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985) (quoting 18 U.S.C. Sec. 3575(e)).[1]
 
 
 15
 Westway submitted evidence indicating that Smolen committed several acts that involved various parties relating to what can arguably be described as a fraudulent scheme to divert Amtec's assets to Smolen's personal accounts. Additionally, Westway claims that Smolen engaged in a fraudulent pattern of misstating the company's net worth by manipulating Amtec's inventory value in order to enable Amtec to borrow more than it was worth. Although these acts are independent of one another, they may have a common purpose: to fraudulently divert Amtec's assets to Smolen's personal account. Thus, Smolen's conduct falls within the RICO "pattern" requirement. See Sedima, 473 U.S. at 496. Accordingly, the district court's summary judgment for Smolen on Westway's RICO claim was improper. See Durning, 990 F.2d at 1138.
 
 III. Amaco v. Smolen
 A. RICO, Fraud, Misrepresentation
 
 16
 Amaco contends that the district court erred when it granted Smolen's motion for summary judgment on Amaco's RICO, fraud and negligent misrepresentation claims. The court, however, correctly determined that Amaco failed to establish justifiable reliance.
 
 
 17
 Amaco contends that it justifiably relied on the May 31, 1982 balance sheet which was verbally communicated to Anita Faulkner, Richard Cook and Harvey Armstrong by DHS and incorporated into the Stock Purchase Agreement as Schedule J on the day of the closing. This argument is undercut by the fact that Amaco included a dollar for dollar adjustment to the purchase price due to the uncertainty of the value of Amtec's inventory. Further, the Amaco plaintiffs were experienced business persons who were aware that Amtec was writing down large quantities of inventory, and were aware that Smolen refused to warrant both the 1981 audited financial statements and the 1982 Statement of Results and Operations. With all of the uncertainty surrounding the current value of Amtec's inventory, as well as Amtec's most recent audited financial statement, Amaco's decision to place reliance on an unaudited balance sheet can hardly be considered prudent.[2] Accordingly, in light of all the circumstances and considering the Amaco plaintiffs' business sophistication, the district court properly granted summary judgment for Smolen on Amaco's RICO, fraud and negligent misrepresentation claims. See Atari Corp., 981 F.2d at 1030-31.
 
 B. Promissory Note
 
 18
 Because Amaco has failed to establish a viable fraud claim against Smolen, its request for relief seeking the cancellation of its promissory note to Smolen on the basis of fraud must also fail.
 
 C. Remaining State Law Claims
 
 19
 The district court granted summary judgment for Smolen on Amaco's claims of breach of contract. The court determined that Amaco failed to oppose Smolen's summary judgment motion. The district court also granted Smolen's motion for summary judgment on Amaco's claims seeking unjust enrichment and imposition of a constructive trust. On appeal, Amaco argues that it opposed both of Smolen's motions by incorporating by reference seven previously submitted motions for summary judgment. Because Amaco merely incorporated the seven motions by broadly referring to them without indicating with any degree of specificity what evidence related to their claims, the district court properly granted summary judgment for Smolen on this claim. See Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).
 
 D. Reinstatement under Section 27A
 
 20
 On December 6, 1991, the district court dismissed Amaco's Rule 10b-5 federal securities claim against Smolen as time barred pursuant to the Supreme Court's decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 111 S. Ct. 2773 (1991). Lampf held that federal securities claims brought under section 10(b) "'must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation."' Durning, 990 F.2d at 1136 (quoting Lampf, 111 S. Ct. at 2782).
 
 
 21
 To abrogate Lampf's harsh affects, on December 19, 1991, Congress enacted Section 27A of the Securities and Exchange Act of 1934, 15 U.S.C. Sec. 78aa-1, which preserves the more lenient state statute of limitations that applied prior to Lampf. Section 27A applies to causes of action commenced on or before June 19, 1991, the day before Lampf was decided, and created a 60-day window of opportunity to resuscitate actions commenced on or before June 19, 1991, which were subsequently dismissed as time barred under Lampf. 15 U.S.C. Sec. 78aa-1(b).
 
 
 22
 On February 4, 1993, Amaco moved to have its 10b-5 claim against Smolen reinstated under section 27A(a). Amaco contends that its cause of action falls within the purview of section 27A(a) because its case was "pending" on the date section 27A was enacted because no final judgment was entered in the dismissal of its 10b-5 claim. The district court denied Amaco's motion.
 
 
 23
 Because the Supreme Court's recent decision in Plaut v. Spendthrift Farm, Inc., 115 S. Ct. 1447 (1995), may have bearing on the disposition of this claim, we vacate the district court's dismissal of Amaco's 10b-5 claim against Smolen and remand for reconsideration in light of Plaut (suggesting Sec. 27A should apply in cases pending on appeal). See id. at 1452.
 
 IV. Amaco v. DHS
 
 24
 To the extent that Amaco is appealing the district court's summary judgment for DHS on Amaco's claim that DHS is liable under RICO because it aided and abetted Smolen's scheme to defraud Amaco, the summary judgment was proper because Smolen did not commit a RICO violation against Amaco. Furthermore, because DHS did not participate in the operation or management of any RICO enterprise, Amaco's RICO claim lacks merit. See Reves, 113 S. Ct. at 1170-73.
 
 V. Sanctions
 
 25
 Following the denial of appellants' second motion for reconsideration, the district court imposed Fed. R. Civ. P. 11 sanctions against appellants' counsel, Bruce MacLeod, for filing a motion which was "not well grounded in fact ... warranted by existing law or a good faith argument for the extension, modification or reversal of existing law ...."
 
 
 26
 "[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).
 
 
 27
 Because we have concluded that the district court erred by dismissing Westway's RICO claim against Smolen, the district court abused its discretion in awarding sanctions against appellants' counsel. See id. Accordingly, the sanction award is VACATED.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED. DHS is awarded costs. The remaining parties should bear their own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The district court concluded that there was "no long term series or 'pattern' of transactions between the parties for which Westway can claim RICO damages." (emphasis added). Demonstration of a "pattern," however, can be proved where the predicate acts injure different victims if the predicate acts are related and pose a threat of continuing activity. See Sedima, 473 U.S. at 496 n.14
 
 
 [2]
 The parties dispute whether Schedule J represented an audited or unaudited balance sheet for Amtec. The Stock Purchase Agreement, however, states that "[t]he balance sheet shall be compared with the ... May 31, 1982 unaudited Balance Sheet ... attached hereto as Exhibit J." Thus, it is clear that Schedule J was merely an interim unaudited balance sheet