**Donald A. STRECK, Plaintiff,**

**v.**

**Sharon L. PETERS, et al., Defendants.**

**Sharon L. PETERS, Counterclaimant,**

**v.**

**Donald A. STRECK, et al., Counterdefendants.**

**No. 93–00977 ACK.**

United States District Court, D. Hawai'i.

June 7, 1994.

Donald A. Streck, pro se.

Sharon L. Peters, pro se.

Edmund Burke, Burke Sakai McPheeters Bordner & Gilardy, Douglas T.Y. Lee, Edmund K.U. Yee, Lee, Kim, Wong, Yee & Lau, Honolulu, HI, for Leonard H. Smith, Smith & Greenberg.

Sidney K. Ayabe, Diane W. Wong, Libkuman Ventura Ayabe Chong & Nishimoto, Honolulu, HI, for P. Gregory Frey, Law Offices of Bradley A. Coates.

Robert M. Wallace, pro se.

Streck & Wallace, pro se.

David W. Sherman, Goodsill Anderson Quinn & Stifel, Honolulu, HI, Ruth Claire Black, Steven P. Rice, Kindel & Anderson, Irvin, CA, for Jerry R. Iggulden.

## ORDER GRANTING SUMMARY JUDGMENT ON STRECK'S COMPLAINT AND DISMISSING PETERS' COUNTERCLAIM

KAY, Chief Judge.

### I. BACKGROUND

On December 22, 1993, Plaintiff Donald P. Streck ("Streck" or "Plaintiff") filed a complaint under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 et seq. (1994), against Defendants Sharon L. Peters ("Peters"), Leonard H. Smith ("Smith"), Smith & Greenberg, P. Gregory Frey ("Frey"), and the Law Offices of Bradley A. Coates (the "Coates firm"). Peters is Streck's former wife. On November 23, 1993, a California state court granted Peters' request for a divorce. Smith, Smith & Greenberg, Frey and the Coates firm acted as Peters' attorneys during various parts of the divorce proceedings. Streck brings his RICO complaint against defendants on the grounds that, during the divorce proceedings, defendants conspired "to get Plaintiff under the jurisdiction of a California court and ruin Plaintiff's law practice so that he would be forced to divulge the secret funds and incomes that they believed he had." Complaint ¶ 16 at 6. Streck brings the suit pursuant to 18 U.S.C. § 1964(c),[1] claiming defendants injured his business in violation of RICO.

On March 11, 1994, Peters filed a counterclaim against Streck, Robert M. Wallace ("Wallace"), Streck & Wallace, Jerry R. Iggulden ("Iggulden"), Right Ideas, Inc. ("Right Ideas"), and Light Ideas, Inc. ("Light Ideas"). The counterclaim asserts claims for abuse of process, intentional infliction of emotional distress, harassment, fraudulent conveyance of business and patent ownership interests, and declaratory relief. Peters maintains these claims arose as a result of the counterdefendants' conduct during the divorce proceedings.

Now before the Court are several motions, including a motion for summary judgment on

---

1. "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c) (1994).

Streck's RICO complaint brought by Frey and the Coates firm and the separate motions to dismiss Peters' counterclaim brought by Streck, Wallace, Streck & Wallace, and Iggulden. During the May 23, 1994 hearing on these motions, the Court informed Streck that it was inclined to grant summary judgment in favor of all defendants and asked Streck if he wanted 20 days to respond to the Court's tentative ruling with regard to the nonmoving defendants. Initially, Streck said he wanted the additional time to respond. Subsequent to hearing the Court's ruling as to the moving defendants, however, Streck specifically informed the Court that he would waive the additional time to respond and agreed that the Court could at this time grant summary judgment as to all defendants, including the nonmoving defendants.

For the reasons stated below, this Court hereby GRANTS summary judgment in favor of all defendants on Streck's RICO complaint and DISMISSES WITHOUT PREJUDICE Peters' counterclaim.

## II. *FACTS*

On December 28, 1992, Streck filed for divorce in a Hawaii state court. Representing Streck in his Hawaii divorce action was Ellen Politano. Sometime after December 28, 1992, Peters filed for divorce in a California state court. She was represented in California by Smith and Smith & Greenberg. She was represented in Hawaii by Frey and the Coates firm.

After filing for divorce in the California court, Peters moved the Hawaii court to dismiss the Hawaii divorce petition or, in the alternative, to transfer the action to California. The Hawaii court denied the motion, but stayed the Hawaii divorce proceeding until resolution of the California divorce proceeding. The Hawaii court stayed the Hawaii divorce proceeding because it found the parties' divorce was controlled by a pre-nuptial agreement governed by California law.

At some point in the divorce proceedings, Politano withdrew as Streck's counsel, and Streck, a patent attorney, represented himself.

The California court granted Peters' divorce petition on November 23, 1993, less than one year after both Streck's Hawaii petition and Peters' California petition were filed.

## III. *STANDARD OF REVIEW*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his or her case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Furthermore, when the nonmoving party relies only on his or her own affidavits to oppose summary judgment, that party cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.

*Hansen v. United States,* 7 F.3d 137, 138 (9th Cir.1993).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, the Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

## IV. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT ON STRECK'S RICO COMPLAINT

This Court finds that summary judgment must be granted in favor of all defendants. Streck invokes this Court's jurisdiction by alleging subject matter jurisdiction pursuant to the RICO statute.[2] Complaint ¶ 1 at 1. If Streck cannot legally maintain a RICO claim against any of the defendants, then no jurisdiction exists in this Court. Frey and the Coates firm's motion reveals that a RICO claim cannot be maintained against any of the defendants, and therefore, because it lacks jurisdiction over the RICO complaint, this Court GRANTS summary judgment as to all defendants. During the May 23, 1994 hearing on the motion for summary judgment, Streck agreed that, if summary judgment should be granted as to Frey and the Coates firm, then it should be granted as to all defendants.

The elements of a RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The failure to establish any of these elements is fatal to a RICO claim. *See Rae v. Union Bank,* 725 F.2d 478, 480–81 (9th Cir.1984) (affirming Rule 12(b) dismissal of RICO claim where plaintiff failed to meet the "enterprise" requirement). Summary judgment must be granted in defendants' favor because Streck cannot establish a pattern of racketeering activity.

RICO defines the term "pattern of racketeering activity" as requiring "at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." RICO, 18 U.S.C. § 1961(5) (1994). Aside from the minimal requirement of showing two predicate acts existed, RICO nowhere addresses the meaning of the term "pattern" as used throughout the statute. In *H.J. Inc. v. Northwestern Bell Telephone Company,* the Supreme Court sought to develop a meaningful concept of that term. 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Drawing on dicta from a previous opinion in which the issue was considered, *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, the Supreme Court divined from

---

**2.** Streck does not and cannot assert diversity jurisdiction. Generally, in order for diversity jurisdiction to exist, none of the plaintiffs may be citizens of the same state as any of the defendants. 28 U.S.C. § 1332(a) (1994). Complete diversity is not present in this case because Plaintiff Streck and Defendants Frey and the Coates firm are citizens of Hawaii.

RICO's legislative history a two-prong framework for analysis: "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Northwestern Bell,* 492 U.S. at 239, 109 S.Ct. at 2900. Thus, the determination of whether a RICO plaintiff is able to establish a pattern of racketeering activity necessarily entails an initial determination of whether the defendants committed two or more predicate acts within the meaning of the RICO statute, *see* 18 U.S.C. § 1961(5) (1994), and, if so, whether the predicate acts were related in a manner such that they created a threat of continued unlawful activity, *Northwestern Bell,* 492 U.S. at 239–43, 109 S.Ct. at 2900–03.

### 1. *Predicate Acts*

Congress has enumerated the predicate acts which may form a basis for a RICO claim in 18 U.S.C. § 1961(1). Section 1961(1) lists five different categories of criminal offenses that could potentially constitute predicate acts. Subsection (A) provides that "any act or threat" involving a variety of criminal offenses "which is *chargeable*" under state law may serve as a RICO predicate. 18 U.S.C. § 1961(1)(A) (1994) (emphasis added). Subsection (B) provides that "any act which is *indictable*" under any of a variety of enumerated federal criminal statutes may serve as a RICO predicate. 18 U.S.C. § 1961(1)(B) (1994) (emphasis added). Streck relies on both subsection (A) and (B) to establish RICO predicates. As to subsection (A), Streck claims defendants committed acts or threats that are chargeable under state criminal law involving extortion. As to subsection (B), Streck claims defendants committed various acts in violation of the following statutes delineated in subsection (B): (1) obstruction of justice under 18 U.S.C. § 1503, (2) extortion under 18 U.S.C. § 1951, (3) mail fraud under 18 U.S.C. § 1341, and (4) wire fraud under 18 U.S.C. § 1343.

### a. *Obstruction of Justice*

Title 18 U.S.C. § 1503 provides that anyone who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" is guilty of obstruction of justice. In his complaint and his opposition, Streck asserts that defendants violated the RICO obstruction of justice statute through the following predicate acts:

(1) Sometime around March or April 1993, Peters committed perjury when she sent a letter to the Hawaii divorce court falsely stating that she had no money to hire an attorney, that she was not represented by counsel, and that jurisdiction in the Hawaii court was improper.

(2) Also sometime around March or April 1993, Smith had Peters send a letter to Streck's Hawaii divorce attorney, Ellen Politano ("Politano"), in which Peters falsely stated that Streck and his law partners were conspiring to hide funds and divert billings to keep Peters from obtaining the property to which she was entitled. The letter undermined Politano's trust in Streck and caused her to fail to challenge the improper jurisdiction of the California court.

(3) Smith had Frey arrange for persons unknown to cause Politano or an agent of Politano to delay the filing of a response to the California divorce petition.

(4) Streck served Smith with Streck's financial statements. Smith suppressed these statements and filed a false declaration, committing the act of perjury, which alleged that Streck had substantially more income than revealed through his financial statements. As a result, the California court awarded Peters temporary spousal support in an amount more than Streck's income could sustain.

(5) Smith filed with the Hawaii divorce court a motion to dismiss, or, alternatively, to transfer the case to California. In support of the motion, Smith and Peters submitted perjured testimony, repeating the perjury they had made earlier with regard to how jurisdiction was improper in Hawaii as well as making "additional untruths."

(6) During the divorce proceedings, Smith and Peters harassed Streck's clients.

For example, Smith unsuccessfully attempted to serve a subpoena on one of Streck's clients in an effort to force the client to testify in the California divorce proceedings. As a result, Streck lost the client's business and an estimated $1 million.

In sum, Streck claims defendants obstructed justice by committing perjury, causing Politano to not pursue his case, and attempting to serve a subpoena on one of his clients.

### 1. *Perjury*

■■■ The federal criminal statute prohibiting perjury, 18 U.S.C. § 1621, does not appear among the statutes listed in § 1961(1)(B), which lists the federal statutory violations which may constitute the necessary predicate acts to support a RICO claim. Nonetheless, some authority exists for the position that perjury may qualify as a RICO predicate act. *C & W Constr. Co. v. Brotherhood of Carpenters & Joiners of Am.*, 687 F.Supp. 1453, 1467 (D.Haw.1988). Other courts, however, had concluded that perjury alone is not "racketeering activity." *E.g., Rand v. Anaconda, Inc.*, 623 F.Supp. 176, 182 (E.D.N.Y.1985) ("Perjury ... is not a RICO predicate act."), *aff'd*, 794 F.2d 843 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Lewis v. Sporck*, 612 F.Supp. 1316, 1325 (N.D.Cal.1985) ("Bad acts, alone, do not qualify as predicate acts for RICO purposes; only those activities set forth in 18 U.S.C. § 1961(1) may serve as the basis for a RICO claim."). Because acts of perjury are indictable under the obstruction of justice statute, *see United States v. Mayer*, 775 F.2d 1387, 1391 (9th Cir.1985) (stating that a false statement to the magistrate is properly charged under § 1503 as this was "consistent with a scheme in which frauds perpetrated upon a court in its adjudicative capacity must be prosecuted as perjury, obstruction of justice, or contempt"), and because the RICO statute specifies that acts indictable under the obstruction of justice

statute are RICO predicate acts, *see* 18 U.S.C. § 1961(1)(B), this Court believes the better reasoned position is that acts of perjury may, under the appropriate circumstances, constitute RICO predicate acts. Nevertheless, this Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. Section 1503 applies only to perjury offered in federal court proceedings. *See O'Malley v. New York City Transit. Auth.*, 896 F.2d 704, 708 (2d Cir.1990) (finding that plaintiff failed to state a violation of § 1503 where the alleged acts took place in "state judicial or administrative courts, not in a federal court as required by § 1503"). Here, all of the alleged perjury took place in state court, not federal court. Thus, § 1503 is not implicated by Streck's perjury allegations.[3]

### 2. *Politano*

■ As to Streck's assertions that Peters' letter to Politano undermined Politano's trust in Streck and caused her to fail to challenge the improper jurisdiction of the California divorce court and that persons unknown actively delayed Politano's filing of a response in the California proceeding, this Court has found no case supporting a finding that such acts constitute obstruction of justice. Even if such a case existed, this Court would hold as it did with regard to the perjury allegations that the act could not be a RICO predicate act because it took place in connection with a state court proceeding. *See O'Malley*, 896 F.2d at 708. Finally, this Court finds Streck has presented insufficient evidence in support of his allegations regarding Politano. In his affidavit, Streck admits he has "no factual evidence to support" these allegations. Affidavit of Donald A. Streck in Support of Opposition to Motion for Summary Judgment ¶ 8 at 8 (filed April 25, 1994). Consequently, this Court finds that the actions defendants allegedly took to cause Poli-

---

3. Even if § 1503 had been implicated, this Court would have found that Streck has presented insufficient evidence in support of his perjury allegations, and, on this basis, held that the perjury did not constitute RICO predicate acts. The only evidence Streck provides in support of his perjury allegations is his own affidavit testimony,

which contains only the most conclusory assertions of perjury and provides no specific facts supporting the assertions. Streck cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact which regard to the perjury allegations. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.1993).

tano to delay her representation of Streck during the divorce proceedings do not constitute RICO predicate acts.

### 3. *Subpoena*

■ The only specific act that Streck offers in support of his assertion that Smith and Peters harassed his clients is that Smith attempted, but failed, to serve a subpoena on one of his clients to testify in the California divorce proceeding. While failing to respond to a valid subpoena issued in connection with a federal judicial proceeding constitutes grounds for an obstruction of justice charge, *see, e.g., United States v. Rasheed,* 663 F.2d 843 (9th Cir.1981), *cert. denied, Phillips v. United States,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982), this Court has found no case holding that a failed attempt to serve a subpoena constitutes grounds for such a charge. Streck's allegations with regard to the subpoena do not establish a RICO predicate act.

### 4. *Conclusion*

None of the acts alleged by Streck constitute a RICO predicate act under the obstruction of justice statute. Hence, to maintain his RICO action, Streck must establish predicate acts under the other statutes he asserts.

### b. *Extortion*

Streck claims Peters committed the predicate act of extortion under 18 U.S.C. § 1961(1)(A) & (B) when she sent an August 30, 1993 letter to Streck in which she "claimed to have a third party financier who was going to assure that Plaintiff would 'be totally wiped out forever' if Plaintiff did not agree to divulge his secret holdings." Section § 1961(1)(A) involves extortion or attempted extortion under state law and Section § 1961(1)(B) involves extortion or attempted extortion under federal law, the Hobbs Act, 18 U.S.C. § 1951 (1994).

■ As to extortion under federal law, "[t]he elements of a Hobbs Act violation are extortion and a nexus with interstate commerce." *United States v. Zemek,* 634 F.2d 1159, 1173 (9th Cir.1980), *cert. denied, Carbone v. United States,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341, *and cert. denied, Caliguri v. United States,* 450 U.S. 985, 101 S.Ct. 1525, 67 L.Ed.2d 821, *and cert. denied, Janovich v. United States,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406, *and cert. denied, Williams v. United States,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406, *and cert. denied, Mazzuca v. United States,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). Section 1951 defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). To prove extortion by wrongful use of force or fear, one must establish that (1) the extortionist induced someone to part with money, property, or other valuable right by the wrongful use or threat of force or fear; (2) the extortionist acted with the intent to obtain money or property that the extortionist knew he or she was not entitled to receive; and (3) commerce from one state to another was or would have been affected in some way. *United States v. Dischner,* 974 F.2d 1502, 1516 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993). As to the § 1951's term "wrongful," the Supreme Court has reasoned that "wrongful" must be read as limiting the statute's coverage to instances where the extortionist's obtaining of the property was wrongful because he or she lacked a lawful claim to it. *United States v. Enmons,* 410 U.S. 396, 400 & n. 3, 93 S.Ct. 1007, 1009–10 & n. 3, 35 L.Ed.2d 379 (1973).

Hawaii law regarding extortion is essentially the same as federal law. In pertinent part, Haw.Rev.Stat. § 707–764 provides that a person commits extortion if he or she "obtains, or exerts control over, the property ... of another with intent to deprive [the other] of the property ... by threatening by word or conduct to" cause bodily injury to a person or cause damage to property. Haw. Rev.Stat. § 707–764(1)(a) & (b) (1994). Furthermore, Haw.Rev.Stat. § 707–769 specifies that "it is a defense to a prosecution for extortion as defined by [§ 707–764(1) ] that the defendant" believed he or she "was entitled to the property ... under a claim of right." Haw.Rev.Stat. § 707–769(1)(b) (1994).

Streck neither alleges nor supplies any evidence that Peters obtained or exerted control over any of his property as a result of the August 30, 1993 letter, and therefore Streck has not satisfied an essential element of extortion under both federal and state law. Streck has also failed to establish attempted extortion. Streck's evidence reveals that Peters believed she had a right to the property she was seeking to obtain through the letter. The California state court had awarded Peters spousal support, which Streck failed to pay. Peters was attempting to obtain the spousal support through the letter. Thus, under federal law, Peters' attempt to obtain Streck's property was not wrongful, and, under state law, Peters' attempt was made under a claim of right. Thus, Peters did not commit attempted extortion when she sent the letter to Streck. Based on the foregoing, the letter cannot establish the RICO predicate act of extortion.

### c. *Mail and Wire Fraud*

Streck claims defendants used the mails and wires in connection with their acts of obstruction of justice and extortion. Streck, however, has failed to establish the obstruction of justice and extortion predicates, and therefore cannot establish mail and wire fraud in connection with these predicates.

### d. *Conclusion*

As shown above, Streck has not established any predicate act under RICO. This alone is sufficient for this Court to grant summary judgment against him. Even if Streck had established the necessary predicate acts, this Court would still grant summary judgment because Streck has not satisfied the continuity requirement needed to prove a pattern of racketeering activity.

### 2. *Continuity*

According to *Northwestern Bell,* "[t]o establish a RICO pattern it must ... be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." 492 U.S. at 240, 109 S.Ct. at 2901. The *Northwestern Bell* Court also explained that there are two alternative ways to satisfy the conti-

nuity prong: "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902.

### a. *Closed-ended continuity*

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Northwestern Bell,* 492 U.S. at 241, 109 S.Ct. at 2902. This formulation raises the question of how long a substantial period of time is. The Supreme Court has declined to draw a bright line of "substantiality." *Id.* at 243, 109 S.Ct. at 2902–03. The Supreme Court did state however that "a few weeks or months" is not enough. *Id.* at 242, 109 S.Ct. at 2902.

Lower courts have followed the Supreme Court's lead in defining substantiality: while declining to draw bright lines, in deference to the fact that substantiality depends to a great extent on the nature of the underlying conduct, numerous courts have announced minimum durations coalescing around a consensus period of one year, short of which closed-ended continuity cannot exist. *See* 1 *Civil RICO Litigation* § 4.03[E][2][a][i], at 4–79 to 4–85 & nn. 217–18 (collecting cases):

> [A]fter more than 500 courts have considered the issue, there is widespread agreement that conduct occurring over a period of less than 12 months is insufficient. On the other hand, the courts finding the period of conduct sufficient have involved acts continuing over a period of one to ten years.

As the Third Circuit recently noted:

> Since [*Northwestern Bell* ], we, along with other courts, have defined a "substantial period of time" without setting any bright line test.... [W]e have never found such a period to exist where the racketeering activity occurred over a period of one year or less.... On the other hand, most courts that have found continuity in a closed period did so in cases involving periods of several years.

*United States v. Pelullo,* 964 F.2d 193, 209 (3d Cir.1992) (citation omitted); *see also Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 609–10 (3d Cir.); *cert. denied,* —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992).

The one post-*Northwestern Bell* case decided by the Ninth Circuit that specifically addressed closed-ended continuity is in accord:

> We have found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year. A pattern of activity lasting only a few months does not reflect the "long term criminal conduct" to which RICO was intended to apply.

*Religious Technology Ctr. v. Wollersheim,* 971 F.2d 364, 366–67 & n. 7 (9th Cir.1992) (collecting cases).

■ The predicate acts alleged by Streck do not support closed-ended continuity. The divorce proceedings between the parties started in December 1992 when Streck filed the Hawaii divorce petition and ended in November 1993 when the California court granted Peters' divorce petition. Streck alleges that the first predicate act occurred in April or May 1993 and the last occurred in August 1993. Thus, the predicate acts alleged here occurred over about a four month period. Four months is not a substantial period of time under *Northwestern Bell* or *Religious Technology Center;* therefore, Streck has not met his burden under a closed-ended continuity theory.

#### b. *Open–Ended Continuity*

■ Continuity may also be demonstrated if the predicate acts "constitute a threat of *continuing* racketeering activity": "past conduct that by its nature projects into the future with a threat of repetition." *Northwestern Bell,* 492 U.S. at 240–41, 109 S.Ct. at 2901–02. This enables a RICO plaintiff to establish a pattern in instances in which the action is brought before the racketeering activity has extended over a period long enough to constitute closed-ended continuity. "In such cases, liability depends on whether the *threat* of continuity is demonstrated." *Id.* at 242, 109 S.Ct. at 2902.

In *Northwestern Bell,* the Supreme Court overturned as too restrictive the Eighth Circuit's "multiple scheme" test, which held that under no circumstances could a RICO pattern be shown when the alleged predicate acts all arose from a "single fraudulent effort or scheme." 492 U.S. at 240, 109 S.Ct. at 2901 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 829 F.2d 648, 560 (8th Cir.1987), *cert. granted,* 485 U.S. 958, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988), *rev'd,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). The Supreme Court however was careful to point out that the existence of only one scheme, episode or event remains "highly relevant." *Id.* The Ninth Circuit, among others, reasoned that the inability of a single scheme to constitute a pattern is because "predicate acts designed to bring about a single event ... [do] not pose a threat of continuity." *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir.1992); *see also Religious Technology Ctr.,* 971 F.2d at 366 (conduct with singular goal poses no threat of continuation beyond attainment of the goal).

*Durning v. Citibank, International,* a recent Ninth Circuit opinion, clarifies the standard for open-ended continuity. 990 F.2d 1133 (9th Cir.1993). In *Durning,* defendants issued $75 million in single-family mortgage revenue bonds. In connection with the bond issue, defendants circulated an Official Statement, a disclosure document akin to a prospectus. Plaintiffs purchased four bonds, believing that the bonds were not subject to redemption prior to 1991. Plaintiffs based their belief on the Official Statement. One of plaintiffs' bonds was redeemed in 1985. Plaintiffs brought suit, alleging violations of federal and state securities laws and RICO. Plaintiffs based their RICO claim on numerous predicate acts of mail and wire fraud in connection with defendants' initial dissemination of the Official Statement.

The Ninth Circuit held that these predicate acts did not constitute a pattern of racketeering activity because all of the acts arose from a single, isolated event: the distribution of the misleading Official Statement. The *Durning* court relied on the following rule of law: The test for pattern in

the Ninth Circuit inquires " 'whether the predicate acts are sporadic or isolated. If they are isolated and sporadic, then they cannot form a 'pattern.' ' " *Id.* at 1138 (quoting *Ikuno v. Yip,* 912 F.2d 306, 309 (9th Cir.1990)).

■ In the case at bar, all of the predicate acts allegedly committed by defendants arose from the single event of attempting to "ruin Plaintiff's law practice so that he would be forced to divulge the secret funds and incomes that they believed he had." Complaint ¶ 16 at 6. Thus, the predicate acts here are isolated and fail to form a pattern. Pursuant to *Durning,* Streck has failed to establish open-ended continuity.

■ Streck cannot establish a pattern of racketeering under RICO. Consequently, the Court hereby GRANTS summary judgment in favor of all defendants on Streck's RICO claim.[4]

## B. *MOTIONS TO DISMISS PETERS' COUNTERCLAIM*

This Court has supplemental jurisdiction over Peters' counterclaim, as the counterclaim provides no independent federal subject matter jurisdiction. No diversity jurisdiction exists because Counterclaimant Peters and Counterdefendants Wallace and Iggulden are citizens of California. Federal question jurisdiction does not exist because Peters does not assert a federal claim, only state law claims.

Supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367. Section 1367(a) provides that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in

the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (1994). Under § 1367(c), a court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4) (1994).

■ The Ninth Circuit has recently held that § 1367 requires a district court to exercise its supplemental jurisdiction over pendent state claims unless section 1367(b) or one of the categories specifically enumerated in § 1367(c) applies. *Executive Software N. Am., Inc. v. United States District Court,* 24 F.3d 1545, 1554 (9th Cir.1994). The Ninth Circuit has further held that under § 1367(c)(4), which permits a remand or dismissal of state claims for "other compelling reasons" when "exceptional circumstances" exist, a district court must (1) articulate why circumstances are sufficiently exceptional for declining jurisdiction as well as (2) inquire whether the balance of the *Gibbs*[5] values of "economy, convenience, fairness and comity" provide compelling reasons for declining jurisdiction in such circumstances. *Executive Software,* 24 F.3d at 1557. If a federal court declines to exercise its supplemental jurisdiction, the court may either dismiss the remaining state law claims or remand them to

---

**4.** Streck's RICO claim is also fatally deficient in that it fails to establish the existence of a RICO "enterprise." There are two elements necessary to establish an "enterprise" under 18 U.S.C. §§ 1961(4) & 1962(c). First, plaintiff must establish an enterprise having an existence "separate and apart" from the pattern of racketeering activity in which it is engaged. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). Second, plaintiffs must also demonstrate the existence of an "ongoing" organization in which the various associates "function as a continuing unit." *Id.* Here, Streck has not even attempted to define

the parameters of the enterprise. This alone is fatal to his RICO claim. *See Otto v. Variable Annuity Life Ins.,* 814 F.2d 1127, 1136 (7th Cir. 1986) ("We affirm the dismissal of the RICO count for failure to identify the enterprise"), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); *Richter v. Sudman,* 634 F.Supp. 234, 240 (S.D.N.Y.1986) (failure to identify the enterprise "provide[s] an independent basis for dismissing RICO claims").

**5.** *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

state court. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 348, 351–53, 108 S.Ct. 614, 617–18, 619–21, 98 L.Ed.2d 720 (1988); *Watkins v. Grover,* 508 F.2d 920, 921 (9th Cir. 1974).

Because this Court has granted summary judgment in favor of all defendants on Streck's RICO claim, this Court has dismissed all claims over which it has original jurisdiction. Thus, under 28 U.S.C. § 1367(c)(3), this Court hereby DECLINES to exercise its supplemental jurisdiction over Peters' counterclaim and hereby DISMISSES it without prejudice. Hence, the Court need not and does not address the merits of the motions to dismiss brought by Streck, Wallace, Wallace & Streck and Iggulden.

## V. *CONCLUSION*

For the foregoing reasons, this Court GRANTS summary judgment in favor of all defendants on Streck's RICO complaint. This Court also DISMISSES WITHOUT PREJUDICE Peters' counterclaim. IT IS SO ORDERED.